*SM*

21-cv-5842
Judge Sharon Johnson Coleman
Magistrate Judge Heather K. McShain
RANDOM

## IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM MCDANIEL III | : | |
| 1817 Ridgemoor Drive | : | |
| Plainfield, IL 60586 | : Case No. _____ | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CHICAGO POLICE DEPARTMENT | : | **FILED** |
| 3510 South Michigan Avenue | : | |
| Chicago, IL 60653 | : | NOV 01 2021 SH |
| SERGENT LULE (2380) | : | |
| OFFICER RODRIGUEZ (12828) | : | **THOMAS G. BRUTON** |
| OFFICER SOTO (16517) | : | **CLERK, U.S. DISTRICT COURT** |
| OFFICER MADISON (936) | : | |
| OFFICER OSTRADA (11910) | : | |
| Defendants. | : | COMPLAINT: |

1

## COMPLAINT AND JURY DEMAND

Plaintiff, WILLIAM MCDANIEL III, complaining of Defendants, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil rights action in which Plaintiff seeks relief for violations of his rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

2. Jurisdiction of this court is found upon 28 U.S.C. § 1331 since this action arises under the United States Constitution.

3. Venue is proper in the United States District Court for the Northern District of Illinois because the majority of the events complained of occurred in this district.

4. Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the Defendants in their individual or official capacity, and for violations and harm caused by their actions/in-actions.

## PARTIES

5. Plaintiff, WILLIAM MCDANIEL III, (Plaintiff) is a law-abiding citizen of the State of Illinois.

6. Upon information and belief, all Defendants are Illinois residents and are being sued in their individual, supervisory, or official capacities as permitted by law.

7. Defendant OFFICER OSTRADA (Badge # 11910), is being sued in his individual capacity. He was at all times relevant to this complaint a resident of Illinois and an employee of the Chicago Police Officer.

8. Defendant OFFICER MADISON (Badge 936), is being sued in his individual, supervisory, and official capacity. He was at all times relevant to this complaint an Illinois resident and an employee of the Chicago Police Department.

9. Defendant OFFICER SOTO (Badge 16517) is being sued in her individual capacity. She was at all times relevant to this complaint an Illinois resident and an employee of the Chicago Police Department.

10. Defendant OFFICER RODRIGUEZ (Badge 12828) is being sued in his individual capacity. He was at all times relevant to this complaint an Illinois resident and an employee of the Chicago Police Department.

11. Defendant SERGEANT LULE (Badge 2380) is being sued in his individual, supervisory, and Official Capacity. He was at all times relevant to this complaint an Illinois resident and a supervisory employee of the Chicago Police Department.

12. Defendant CHICAGO POLICE DEPARTMENT is a municipality in the State of Illinois.

### STATEMENT OF FACTS

13. In the evening on December 10, 2019, Plaintiff was at the District 7 Police department. He entered the lobby and asked a few questions.

14. Once he exited the building he returned to the public sidewalk outside of the District 7 police station.

15. There, He began recording. Several police cruisers were parked along the sidewalk and Plaintiff began to record his exterior inspection of the vehicles. His purpose was to see whether the vehicles where compliant with the law.

16. Plaintiff walked next to an unmarked Cruiser and confirmed the front and back plates matched. While remaining on the public sidewalk, he shined a flashlight into the cruiser and confirmed the police laptop was in the vehicle.

17. Plaintiff repeated this process on three vehicles. At all times relevant he remained on the public sidewalk.

18. Upon nearing the third Cruiser, Plaintiff noted that the front license plate was missing on vehicle 9127.

19. While Plaintiff walked around the outside of the vehicle, another cruiser pulled away from the station. Plaintiff also zoomed his camera in so that the interior of the front of the vehicle was visible. There, he recorded a Police laptop that had been left on and open. On the screen, someone's private information was visible, including their address and driver's license number.

20. Plaintiff began to move away from the vehicle when an officer approached him.

21. Plaintiff asked the officer whether he worked here. The officer stated he did. Plaintiff then asked whether the cruiser without the front plate was the officer's vehicle, and the officer stated that it was. Plaintiff proceeded to tell the officer that his vehicle was missing a front plate.

22. The officer told Plaintiff the plate had fallen off and he had reported it. The officer then went on his way.

23. Plaintiff approached yet another vehicle with the lap top left on. He then continued further down the line of Police vehicles parked along the sidewalk.

24. Again, he approached a vehicle with the lap top on and information displayed.

25. Plaintiff then turned the corner and continued to inspect more police vehicles. He inspected two more police vehicles from the sidewalk when Officer Ostrada approached him.

26. Officer Ostrada asked Plaintiff whether he worked for the City. Plaintiff truthfully responded that he did not.

27. Officer Ostrada then asked why Plaintiff was looking at the police vehicles. Plaintiff asked the officer for his name and badge number before engaging in further discussion with the officer.

28. Plaintiff repeatedly asked Officer Ostrada for his name and badge number. Rather than responding to Plaintiff, the Officer radioed in that there was an "individual looking in squad cars."

29. As two more officers Approached, the initial officer stated to Plaintiff that he had no business looking into squad cars.

30. As the two additional officers stood surrounding Plaintiff, the Officer Ostrada began shining a flashlight into Plaintiff's face. Suddenly, seven officers surrounded Plaintiff.

31. Plaintiff asked why he was being surrounded by seven officers. He did not receive an answer. He continued to ask as four additional officers approached. At this point, Plaintiff was surrounded by 11 officers.

32. Officer Madison (Badge 936) told Plaintiff that it was fine for him to record, but he could not come close to the police vehicles, though Plaintiff had at all times remained on public property and did not make contact with he vehicles.

33. After speaking with Plaintiff, several other officers dispersed. However, a few remained surrounding Plaintiff.

34. In fact, Officer Ostrada (Badge 11910) remained. Plaintiff asked the officer if he felt better now.

35. Then, Officer Madison ordered the officers remaining at the scene to cuff plaintiff if Plaintiff took an "extra step." Plaintiff explained that Officer Madison's statement was a threat. Officer Madison responded that that statement was a promise.

36. Eventually the officer's dispersed and Plaintiff was able to go on his way.

37. Then, on February 9, 2020, Plaintiff was live streaming video on the public sidewalk outside the Chicago Police Training Academy. He was demonstrating how the officers were consistently breaking the law.

38. Plaintiff witnessed an officer drive off without his headlights and without using the turn signal.

39. A few moments after witnessing this, Officer Soto (Badge 16517) and Officer Rodriguez (Badge 12828) approached Plaintiff. They asked what he was doing and ordered Plaintiff to present his identification.

40. Plaintiff filmed some of this interaction.

41. Officer Rodriguez grabbed Plaintiff by his arm and pushed Plaintiff into the street, Officer Rodriguez began yelling at Plaintiff, ordering him to put his camera down.

42. Plaintiff is then cuffed and Officer Soto threatens Plaintiff with jail while Officer Rodriguez emptied Plaintiff's pocket contents onto the police car.

43. Plaintiff was forced to stand in front of a cruiser for some time.

44. Plaintiff then asked for the supervisor.

45. Plaintiff was also patted down multiple times.

6

46. After being patted down a second time, Sergeant Lule (Badge 2380) then arrived and claimed that Plaintiff's possession of a scanner was an ordinance violation.

47. However, Plaintiff had not been using the scanner to transmit or broadcast anything.

48. Sergeant Lule then asked Plaintiff for his identification. Plaintiff stated that unless he was being arrested, he would not provide his identification.

49. Sergeant Lule went back to his police car and looked up the scanner laws.

50. Sergeant Lule authorized the arrest while knowing the scanner law and knowing there was no probable cause.

51. Plaintiff was transported by two officers whom he had not seen before to the District 12 Police Station.

52. While at the police station, Plaintiff was searched thoroughly and was placed in a holding cell.

53. In the holding cell he was handcuffed to the wall.

54. Plaintiff was detained for 2.5 hours before his belongings were returned.

55. Upon information and belief, the shift commander ordered Plaintiff to be released because there was no evidence that Plaintiff violated any law or otherwise failed to comply with a lawful order.

56. Plaintiff was not charged with anything.

57. Defendants refused to give Plaintiff a police report number or a copy of the police report despite Plaintiff's requests.

58. All officers were wearing body cameras at the time of the incident.

59. Chicago Police Department has a policy or custom of arresting, detaining, intimidating, or otherwise stopping citizens from recording officers and police stations regardless of whether those citizens are on public sidewalks.

60. Pursuant to this policy or custom, officers purposefully targeted Plaintiff because he was recording the public view.

61. Plaintiff's arrest resulted in abrasions, bruising, and pain to his wrists.

62. Plaintiff's arrest resulted in trouble with some of his family relationships.

**COUNT I**
**Fourth Amendment- Unreasonable Seizure**
**(Officer Ostrada (Badge 11910), Officer Madison (Badge 936)**

63. Plaintiff incorporates by reference each and every allegation set forth in all prior allegations.

64. At all times relevant here in, Defendants were acting under color of State Law.

65. Defendant's seizure of Plaintiff was objectively unreasonable.

66. Defendants did not have reasonable suspicion to detain Plaintiff.

67. At no point did Plaintiff engage in any illegal or deviant activity.

68. At all times relevant, Plaintiff had a clearly established right to be free from unreasonable seizures of this nature.

69. At all times relevant, Defendants were required to obey the laws of the United States.

70. At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiff.

71. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff suffered damages for his mental, emotional, and physical injury, and for pain, mental anguish, humiliation and embarrassment.

## COUNT II
## FOURTH AMENDMENT UNREASONABLE SEARCH AND SEIZURE
## Officer Soto (Badge16517), Officer Rodriguez (12828), Sergeant Lule (Badge 2380)

72. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

73. At all times relevant herein, Defendants were acting under color of law.

74. Plaintiff had a fourth amendment right to be free from unreasonable search and seizure.

75. At no time did Defendants have reasonable suspicion needed to detain Plaintiff.

76. At no time did Defendants have probable cause to arrest Plaintiff.

77. Defendants acted unreasonably and unlawfully when they detained Plaintiff.

78. Defendants acted unreasonably and unlawfully when they repeatedly search Plaintiff and otherwise patted him down.

79. Defendants acted unreasonably and unlawfully when they detained Plaintiff in hand cuffs at the front of the cruiser.

80. Defendants acted unreasonably and unlawfully when they transported him to the police station and held him in a cell.

81. At all times relevant, defendants were required to obey the laws of the United States.

82. At all times relevant, Plaintiff had a clearly established right to be free from such unreasonable searches and seizures.

83. At all times relevant, Defendants knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently violated Plaintiff's fourth amendment rights.

84. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff suffered damages for his mental, emotional, and physical injury, and for pain, mental anguish, humiliation and embarrassment.

## COUNT III
## FIRST AMENDMENT RETALIATION FOR EXERCISING A PROTECTED RIGHT
### (Officer Ostrada (Badge 11910), Officer Madison (Badge 936), Officer Soto (Badge16517), Officer Rodriguez (12828), Sergeant Lule (Badge 2380)

85. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

86. At all times relevant herein, Defendants were acting under color of state law.

87. Plaintiff had a clearly established First Amendment right to be present on public sidewalks and to record the public view.

88. Plaintiff was engaged in constitutionally protected conduct when he recorded police vehicles from public property.

89. Defendants stopped Plaintiff in an effort to intimidate him out of recording police and police vehicles.

90. Defendants actions would have a chilling effect on a reasonable person's speech.

91. Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Plaintiffs from recording police vehicles and police officers conducting their duties.

92. The Defendants' acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

93. As a proximate cause of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages as a result.

## COUNT VI
## FIRST AND FOURTH AMENDMENT SUPERVISORY LIABILITY
### (Sergeant Lule (Badge 2380), Officer Madison (Badge 936)

94. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

95. At all times relevant herein, Defendants were acting under color of law.

96. Defendants acted unreasonably and unlawfully when they detained, threatened to arrest, arrested, or otherwise directed subordinate officers to detain, threaten to arrest, or arrest Plaintiff.

97. A reasonable officer in Defendants' situation would have ordered subordinate officers to stop violation Plaintiff's fourth Amendment Rights.

98. Defendants acted with the intention of curtailing Plaintiff's First Amendment right to record the public view.

99. Defendants retaliated against Plaintiff, intimidated Plaintiff, or otherwise ordered subordinate officers to do so in an effort to prevent Plaintiff from exercising his First Amendment Rights.

100. Defendants were personally involved in violating Plaintiff's constitutional rights in that they had actual knowledge of Plaintiff's Fourth Amendment Violation and either encourage such continued conduct or ratified that conduct.

101. Defendants actions would chill a reasonable person's protected speech.

102. At all times relevant, Plaintiff had a clearly established right to be free from retaliation for exercising a First Amendment Right.

103.    At all times relevant, defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently violated Plaintiff's First and Fourth Amendment Rights.

104.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages for his mental, emotional, and physical injury, and for pain, mental anguish, humiliation, and embarrassment.

**COUNT V**
**MONELL LIABILITY**
**(Chicago Police Department)**

105.    Defendant officers' repeated instances of violating Plaintiff's First and Fourth Amendment Rights Demonstrates that the Chicago Police department has a custom or policy of violating these rights, or otherwise failed to train their officers.

106.    Chicago Police Department's actions constitute a custom or policy, or a failure to train, that had a plainly obvious consequence of depriving citizens of their right to be free from unreasonable searches and seizures, and their First Amendment Rights.

107.    As a direct and proximate result of the Chicago Police Department's actions, Plaintiff suffered damage for his physical, mental, emotional injury, and for pain, mental anguish, humiliation, and embarrassment

**PRAYER FOR RELIEF**

108.    Plaintiff, William McDaniel III, demands judgment and prays for the following relief, jointly and severally, and against all Defendants.

  a. Full and fair compensatory damages in the amount determined by a jury;

  b. Punitive damages in an amount determined by a Jury;

  c. Reasonable attorney's fees and costs of this action;

d. Court fees and costs of this action; and

e. Any other such relief as appears just and proper.

## JURY DEMAND

109.	Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 28(b).

:	:	:	:	:	:	:
:	**WILLIAM MCDANIEL III**
:	1817 Ridgemoor Drive
:	Plainfield, Illinois 60586
:	630-544-8540
:
:	*Bill McDaniel*
:	PLAINTIFF
:	:	:	:	:	:	:

13