IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM MCDANIEL III          )<br>                                              )<br>         **Plaintiff,**                )<br>                                              )  Case No. 21-cv-5842<br>v.                                            )<br>                                              )  Judge Sharon Johnson Coleman<br>SERGENT LULE #2380, P.O.      )<br>RODRIGUEZ #12828, P.O. SOTO )  Magistrate Judge Heather K. McShain<br>#16517, P.O. MADISON #936, P.O. )<br>OSTRADA #11910, and the CITY OF )  JURY DEMAND<br>CHICAGO, a Municipal Corporation, )<br>                                              )<br>         **Defendants.**             ) | |

## FIRST AMENDED COMPLAINT

Plaintiff WILLIAM MCDANIEL III, by and through his attorneys, Gregory E. Kulis & Associates, Ltd., complaining against Defendants, respectfully alleges the following:

### JURISDICTION AND VENUE

1. This is a civil rights action in which Plaintiff seeks relief for violations of his rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

2. Jurisdiction of this court is found upon 28 U.S.C. §§ 1331 and 1343 since this action arises under the United States Constitution.

3. Venue is proper in the United States District Court for the Northern District of Illinois because the events complained of occurred in this district.

4. Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the

1

Defendants in their individual or official capacity, and for violations and harm caused by their actions/inactions.

## PARTIES

5. Plaintiff WILLIAM MCDANIEL III, (Plaintiff) is a law-abiding citizen of the State of Illinois.

6. Upon information and belief, all individual Defendants are Illinois residents and are being sued in their individual capacity and were all duly licensed Chicago Police Officers acting pursuant to the customs and policies of the Chicago Police Department and under color of law.

7. Defendant OFFICER OSTRADA (Badge # 11910) is being sued in his individual capacity. He was at all times relevant to this complaint a resident of Illinois and an employee of the Chicago Police Department.

8. Defendant OFFICER MADISON (Badge 936) is being sued in his individual, supervisory, and official capacity as a Chicago Police Officer acting under color of law.

9. Defendant OFFICER SOTO (Badge 16517) is being sued in her individual capacity as a Chicago Police Officer acting under color of law.

10. Defendant OFFICER RODRIGUEZ (Badge 12828) is being sued in his individual capacity as a Chicago Police Officer acting under color of law.

11. Defendant SERGEANT LULE (Badge 2380) is being sued in his individual, supervisory, and official capacity as a Chicago Police Officer acting under color of law.

12. Defendant CITY OF CHICAGO is a municipality in the state of Illinois.

## COUNT I – FIRST AMENDMENT VIOLATION

13. On the evening of December 10, 2019, Plaintiff was at the District 7 police department. He entered the lobby and asked a few questions.

14. Once he exited the building he returned to the public sidewalk outside of the District 7 police station.

15. There, he began recording. Several police cruisers were parked along the sidewalk and Plaintiff began to record his exterior inspection of the vehicles. His purpose was to see whether the vehicles were compliant with the law.

16. Plaintiff walked next to an unmarked cruiser and confirmed the front and back plates matched. While remaining on the public sidewalk, he shined a flashlight into the cruiser and confirmed the police laptop was in the vehicle.

17. Plaintiff repeated this process on three vehicles. At all times relevant he remained on the public sidewalk.

18. Upon nearing the third cruiser, Plaintiff noted that the front license plate was missing on vehicle 9127.

19. While Plaintiff walked around the outside of the vehicle, another cruiser pulled away from the station.

20. Plaintiff also zoomed his camera in so that the interior of the front of the vehicle was visible. There, he recorded a Police laptop that had been left on and open. On the screen, someone's private information was visible, including their address and driver's license number.

21. Plaintiff began to move away from the vehicle when an officer approached him.

22. Plaintiff asked the officer whether he worked here. The officer stated he did. Plaintiff then asked whether the cruiser without the front plate was the officer's vehicle, and the officer stated that it was. Plaintiff proceeded to tell the officer that his vehicle was missing a front plate.

23. The officer told Plaintiff the plate had fallen off and he had reported it. The officer then went on his way.

24. Plaintiff approached yet another vehicle with the police laptop left on. He then continued further down the line of Police vehicles parked along the sidewalk.

25. Again, he approached a vehicle with the police laptop on and information displayed.

26. Plaintiff then turned the corner and continued to inspect more police vehicles. He inspected two more police vehicles from the sidewalk when Officer OSTRADA approached him.

27. Officer OSTRADA asked Plaintiff whether he worked for the City. Plaintiff truthfully responded that he did not.

28. Officer OSTRADA then asked why Plaintiff was looking at the police vehicles. Plaintiff asked the officer for his name and badge number before engaging in further discussion with the officer.

29. Plaintiff repeatedly asked Officer OSTRADA for his name and badge number. Rather than responding to Plaintiff the Officer radioed in that there was an "individual looking in squad cars."

30. As two more officers approached, the initial officer stated to Plaintiff that he had no business looking into squad cars.

31. As the two additional officers stood surrounding Plaintiff, Officer OSTRADA began shining a flashlight in Plaintiff's face. Suddenly, seven officers surrounded Plaintiff.

32. Plaintiff asked why he was being surrounded by seven officers. He did not receive an answer. He continued to ask for an explanation as four additional officers approached. At this point, Plaintiff was surrounded by 11 officers.

4

33. Officer MADISON (badge 936) told Plaintiff that it was fine for him to record, but he could not come close to the police vehicles, though Plaintiff had at all times remained on public property and did not make contact with he vehicles.

34. After speaking with Plaintiff several other officers dispersed. However, a few remained surrounding Plaintiff.

35. Officer OSTRADA (Badge 11910) remained. Plaintiff asked the officer if he felt better now.

36. Then, Officer MADISON ordered the officers remaining at the scene to cuff plaintiff if Plaintiff took an "extra step." Plaintiff explained that Officer MADISON's statement was a threat. Officer MADISON responded that that statement was a promise.

37. Eventually the officers dispersed and Plaintiff was able to go on his way.

38. The actions of Defendant Officers OSTRADA and MADISON were intentionally done in an effort to chill Plaintiff's exercise of his First Amendment rights.

39. As a result of the actions of Defendants OSTRADA and MADISON, the Plaintiff incurred emotional distress, fear, anxiety, and violation of his First Amendment rights.

40. The actions of the Defendants were intentional, willful, and wanton.

Wherefore, the Plaintiff, WILLIAM MCDANIEL III, prays for judgment against P.O. OSTRADA and P.O. MADISON for reasonable compensatory damages, punitive damages, fees and costs.

## COUNT II – FEBRUARY 9, 2020 – FIRST AMENDMENT VIOLATION

1.- 40. The Plaintiff hereby realleges his allegations of paragraphs 1-40 of Count I as his allegations of paragraphs 1-40 of Count II as though set forth herein.

41. On February 9, 2020, Plaintiff was live streaming video on the public sidewalk outside the Chicago Police Training Academy. He was demonstrating how the officers were consistently breaking the law.

42. Plaintiff witnessed an officer drive off without his headlights and without using the turn signal.

43. A few moments after witnessing this, Officer SOTO (Badge 16517) and Officer RODRIGUEZ (Badge 12828) approached Plaintiff. They asked what he was doing and ordered Plaintiff to present his identification.

44. Plaintiff filmed some of this interaction.

45. Officer RODRIGUEZ grabbed Plaintiff by his arm and pushed Plaintiff into the street, Officer RODRIGUEZ began yelling at Plaintiff, ordering him to put his camera down.

46. Plaintiff was then cuffed, and Officer SOTO threatened Plaintiff with jail while Officer RODRIGUEZ emptied Plaintiffs pocket contents onto the police car.

47. Plaintiff was forced to stand in front of a cruiser for some time.

48. Plaintiff then asked for the supervisor.

49. Plaintiff was also patted down multiple times.

50. After being patted down a second time, Sergeant LULE (Badge 2380) then arrived and claimed that Plaintiff's possession of a scanner was an ordinance violation.

51. However, Plaintiff had not been using the scanner to transmit or broadcast anything.

52. Sergeant LULE went back to his police car and looked up the scanner laws.

53. Sergeant LULE authorized the arrest while knowing the scanner law and knowing there was no probable cause.

54. Plaintiff was transported by two officers whom he had not seen before to the District 12 Police Station.

55. While at the police station, Plaintiff was searched thoroughly and was placed in a holding cell.

56. In the holding cell he was handcuffed to the wall.

57. Plaintiff was detained for 2.5 hours before his belongings were returned.

58. Upon information and belief the shift commander ordered Plaintiff to be released because there was no evidence that Plaintiff violated any law or otherwise failed to comply with a lawful order.

59. Plaintiff was not charged with anything.

60. Defendants refused to give Plaintiff a police report number or a copy of the police report despite Plaintiff's requests.

61. All officers were wearing body cameras at the time of the incident.

62. The actions of the Defendants were done in an effort to chill Plaintiff's exercise of his First Amendment rights.

63. As a result of the actions of the Defendants, Plaintiff emotional distress, fear, anxiety, and violation of his First Amendment rights.

Wherefore, the Plaintiff prays for judgment against P.O. LULE, P.O. SOTO, and P.O. RODRIGUEZ for reasonable compensatory damages, punitive damages, attorney's fees and costs.

### COUNT III – UNLAWFUL ARREST AND SEIZURE

1.-63. The Plaintiff hereby realleges his allegations of paragraphs 1-63 of Count II as his allegations of paragraphs 1-63 of Count III as though set forth herein.

64. The actions of taking the Plaintiff into custody constitute an unlawful arrest and seizure.

65. As a result of the actions of the Defendants P.O. LULE, P.O. SOTO, and P.O. RODRIGUEZ, plaintiff suffered fear, anxiety, emotional distress, and a violation of his Fourth and Fourteenth Amendment Rights.

Wherefore, the Plaintiff prays for judgment against P.O. LULE, P.O. SOTO, and P.O. RODRIGUEZ for reasonable compensatory damages, punitive damages, attorney's fees and costs.

## COUNT IV – *MONELL* POLICY

1.-65. The Plaintiff hereby realleges his allegations of paragraphs 1-65 of Counts I, II and III as his allegations of paragraphs 1-65 of Count IV as though set forth herein.

66. The Defendant Officers were acting in accordance with the customs and procedures of interference with citizens lawfully photographing police and police operations.

67. The two incidents of December 10, 2019, and February 9, 2020 are just examples of the ongoing custom, practice, and policy of the Chicago Police Department and the CITY OF CHICAGO.

68. The customs, practices, and policies of police intentionally interfering with citizens' right to film their police has been ongoing and accepted for quite some time.

69. The customs and practices are carried out by police interfering with filming, taking the camera, and/or threatening citizens with arrests.

70. As a result of these customs, practices, and policies, citizens' First and Fourth Amendment rights have been violated.

71. As a result of these customs, practices, and policies, Plaintiff WILLIAM MCDANIEL III's rights have been violated.

Wherefore, the Plaintiff prays for judgment the CITY OF CHICAGO for reasonable compensatory damages, punitive damages, attorney's fees and costs.

### COUNT V – INDEMNIFICATION, COUNTS I-III

1-71. The Plaintiff, hereby realleges and incorporates his allegations of paragraphs 1-71 of Counts I, II, and III as his respective allegations of paragraphs 1-71 of Count V as though fully set forth herein.

72. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

73. The Defendants were employees of THE CITY OF CHICAGO, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, should the Defendants be found liable for any of the acts alleged above, the Defendant, THE CITY OF CHICAGO, would be liable to pay the Plaintiff any judgment obtained against the Defendants.

### JURY DEMAND

The Plaintiff, WILLIAM MCDANIEL III, hereby requests a trial by jury.

Respectfully submitted,
WILLIAM MCDANIEL III

By: _____
Gregory E. Kulis

Gregory E. Kulis (6180966)

9

Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602-3368
p. (312) 580-1830 / f. (312) 580-1839
e. service@kulislawltd.com
Pursuant to Illinois Supreme Court Rules 11(b)(6) and 131(d)(1) e-service is accepted solely at service@kulislawltd.com.